**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.   17-262** |
| v. | : | |
| **JOSE LUIS DE LA CRUZ-RAMIREZ** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The government respectfully submits its sentencing memorandum.   Mr. de la Cruz-Ramirez pleaded guilty on June 13, 2017.   A sentencing hearing is scheduled for June 28, 2017.

I.    **BACKGROUND**

   A.    **The Charges**

On May 11, 2017, a grand jury sitting in the Eastern District of Pennsylvania returned a one-count Indictment charging the defendant Jose Luis de la Cruz-Ramirez with reentry after deportation, in violation of 8 U.S.C. § 1326(a).   The defendant pleaded guilty to the single count in the Indictment.

   B.    **The Offense Conduct**

The defendant is a native and citizen of Mexico.   On the following five prior occasions, United States Border Patrol Agents encountered Mr. de la Cruz-Ramirez:   (1) December 31, 1997, (2) June 26, 2003, (3) June 30, 2003, (4) May 20, 2005, and (5) July 3, 2007.   Upon each encounter, the defendant was granted voluntary return to Mexico.

On February 14, 2014, a United States Border Patrol Agent encountered de la Cruz-Ramirez near Hidalgo, Texas.   On that same date, an Order of Removal was issued.   Mr. de la Cruz-Ramirez was given a Form I-295 Notice of Removal, warning him that it is a crime

1

for an alien removed from the United States to return without the express consent of the Secretary of Homeland Security.   On February 17, 2014, the defendant was photographed, fingerprinted, and removed from the United States.

On September 8, 2015, Mr. de la Cruz-Ramirez was found in the United States and taken into custody by Pennsylvania State Police.   On September 9, 2015, the February 16, 2014 Order of Removal was reinstated, and a Warrant of Removal was issued.   The defendant received a Form I-294 Warning notifying him that he may not return to the United States without the express consent of the Attorney General.   On September 16, 2015, Mr. de la Cruz-Ramirez was photographed, fingerprinted, and removed from the United States.

On April 6, 2016, Border Patrol Agents found Mr. de la Cruz-Ramirez entering the United States in Texas.   On that date, the February 16, 2014 Order of Removal was again reinstated, and a Warrant of Removal was issued.   Mr. de la Cruz-Ramirez was again given a Form I-294 Warning notifying him that he may not return to the United States without the express consent of the Secretary of Homeland Security.   On May 4, 2016, the defendant was photographed, fingerprinted, and removed from the United States.

On April 10, 2017, Deportation Office Bryan Buskirk found and arrested Mr. de la Cruz-Ramirez in New Hope, Pennsylvania.   The defendant originally provided DO Buskirk with false identification and told the officer that he had never been deported.   DO Buskirk fingerprinted the defendant and got a match for the identity of Jose Luis de la Cruz-Ramirez.

On April 10 and 18, 2017, Mr. de la Cruz-Ramirez was interviewed by Homeland Security officers to establish alienage and deportability.   The defendant admitted that he was a

citizen of Mexico, that he had entered the United States without permission, and that he had been deported in the past.

Fingerprints taken from Mr. de la Cruz-Ramirez on April 10, 2017 matched the fingerprints from the three prior two deportations in 2014, 2015, and 2016.

## II.    STATUTORY MAXIMUM AND MANDATORY MINIMUM SENTENCE

The maximum sentence for a violation of 8 U.S.C. § 1326(a) is 2 years' imprisonment, a one-year period of supervised release, a $250,000 fine, and a $100 special assessment.

## III.    SENTENCING ANALYSIS

Sentencing involves a three-step process:   "At step one, the court calculates the applicable Guidelines range, which includes the application of any sentencing enhancements[.] At step two, the court considers any motions for departure and, if granted, states how the departure affects the Guidelines calculation.   At step three, the court considers the recommended Guidelines range together with the statutory factors listed in 18 U.S.C. § 3553(a) and determines the appropriate sentence, which may vary upward or downward from the range suggested by the Guidelines."   United States v. Wright, 642 F.3d 148, 152 (3d Cir. 2011) (internal citations omitted).

### A.    Sentencing Guidelines Calculation

The Presentence Report ("PSR") provided to the Court accurately analyzes the defendant's calculated Guidelines sentencing range.   The offense was committed on April 10, 2017, and application of the 2016 Guidelines Manual (effective November 1, 2016) creates no *ex post facto* issues.   The applicable section is USSG § 2L1.2.

The Base Offense Level is **8**.   USSG § 2L1.2(a).   None of the Specific Offense

3

Characteristics apply to Mr. de la Cruz-Ramirez, leaving his offense level at **8**.   With the defendant's acceptance of responsibility (decreased by two levels, USSG § 3E1.1(a)), the Total Offense Level is **6**.

The defendant has no prior criminal convictions, and his Criminal History Category is **I**. Accordingly, the defendant's calculated Guideline range is **0-6** months' imprisonment.   This falls within Zone A of the Guidelines Table and is a Class E felony under 18 U.S.C. § 3559(a)(3).   For purposes of Supervised Release, the Guidelines recommends a term of one year.   USSG § 5D1.2(a)(3).   Because Mr. de la Cruz-Ramirez is likely to be deported upon completion of any term of imprisonment, supervised release is not typically ordered.   USSG § 5D1.1(c).   However, given the defendant's serial illegal entries into the United States ((1) December 31, 1997, (2) June 26, 2003, (3) June 30, 2003, (4) May 20, 2005, (5) July 3, 2007, (6) February 14, 2014, (7) September 8, 2015, (8) April 6, 2016, and (9) April 10, 2017)), the government requests that a one-year term of supervised release be imposed to further deter Mr. de la Cruz-Ramirez from returning to the United States without permission.

**B.      18 U.S.C. § 3553(a) Analysis**

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence in this case is one within the calculated Guidelines range of 0-6 months' imprisonment.   While supervised release is not typically imposed in cases in which the defendant is likely to be removed following a term of imprisonment, because of Mr. de la Cruz-Ramirez's history of unlawfully entering the United States, the Government requests that a period of supervised release be imposed.

The sentencing factors in 18 U.S.C. § 3553(a) include: (1) the nature and circumstances

of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.   18 U.S.C. § 3553(a).[1]

1.   **The nature and circumstances of the offense and the history and characteristics of the defendant;**

The defendant has improperly entered the United States nine times and has been removed eight times.   The defendant appears to be in the United States to earn money and has been working in a variety of agricultural jobs in the United States while his family members reside in Mexico.

2.   **The need to promote respect for the law;**

The defendant has been removed from the United States eight times and is likely to be

---

[1]   Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."   The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'"   United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

removed a ninth time.   The recommended term of imprisonment is therefore required to reflect

the seriousness of the offense and to promote respect for the law.

### 3.      The need to provide just punishment for the offense;

Section 3553(a) requires courts to consider the need to provide just punishment for the

offense.   The Guidelines Specific Offense calculation is a just punishment for the offense.

### 4.      The need to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant;

As noted above, Mr. de la Cruz-Ramirez is a serial offender who has eight times before

been removed from the United States, though this is his first criminal conviction.   Each time the

defendant was removed, he was warned on the Form I-294 that if he returned, he could be

subject to prosecution for illegal reentry and could face imprisonment.   The removal process

that included warnings of the potential consequences of any return did not deter the defendant

from coming back.   In addition to a period of incarceration, the Government requests that the

sentence imposed include a period of supervised release so that if the defendant returns to the

United States while on supervision, his reentry would violate that supervised release.

### 5.      The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;

There is no need in this case to adjust the sentence in order "to provide the defendant

with needed educational or vocational training."   18 U.S.C. § 3553(a)(2)(D).

### 6.      The need to provide restitution to any victims of the offense;

Restitution is not an issue in this case.

### 7.      The need to avoid unwarranted disparities;

While the sentencing Guidelines are advisory, they remain the sole means available for

assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in

adopting the Sentencing Reform Act of 1984.   Reference to the Guidelines, while carefully

considering the 3553(a) factors particularly relevant to an individual defendant, is the only

available means of preventing the disfavored result of sentence disparities resulting from random

judicial assignments.   The Third Circuit has explained:

> Even under the current advisory system, district courts must
> "meaningfully consider" § 3553(a)(4), i.e., the applicable category of offense . . .
> as set forth in the guidelines.   The section of *Booker* that makes the Guidelines
> advisory explains that the remaining system, while not the system Congress
> enacted, nonetheless continue[s] to move sentencing in Congress' preferred
> direction, *helping to avoid excessive sentencing disparities while maintaining
> flexibility sufficient to individualize sentences where necessary.* The Guidelines
> remain at the center of this effort to avoid excessive sentencing disparities, and, as
> the *Booker* Court explained, "the Sentencing Commission will continue to
> promote uniformity in the sentencing process" through the Guidelines.   We have
> likewise observed that the Guidelines remain an essential tool in creating a fair
> and uniform sentencing regime across the country.

United States v. Ricks, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original, and internal

citations and quotations omitted).   Therefore, the Supreme Court has held that "district courts

must begin their analysis with the Guidelines and remain cognizant of them throughout the

sentencing process" in order to assure fair, proportionate, and uniform sentencing of criminal

offenders.   Gall, 128 S. Ct. at 597, n.6.

Moreover, this Section 3553(a) factor is not primarily concerned with sentencing

disparities in a particular case; it is designed to ensure sentencing consistency among similarly

situated defendants across the entire nation. See United States v. Parker, 462 F.3d 273 (3d Cir.

2006); United States v. Carson, 560 F.3d 566, 586 (6th Cir. 2009) ("Although it is true that

§ 3553(a)(6) requires a sentencing judge to consider 'the need to avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar

conduct,'" that "factor 'concerns national disparities between defendants with similar criminal histories convicted of similar criminal conduct – not disparities between codefendants.'").

As explained above, a sentence within the Guideline range will not only provide just punishment, but avoid creating any unwarranted disparity among similarly situated defendants.

## IV.   **CONCLUSION**

In sum, all of the appropriate considerations of sentencing favor the imposition in this case of a sentence within the Guidelines range of 0-6 months' imprisonment, along with a one-year period of supervised release.


Respectfully submitted,


LOUIS D. LAPPEN
Acting United States Attorney


 /s   Jennifer B. Jordan
JENNIFER B. JORDAN
Assistant United States Attorney

DATED:   June 22, 2017

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the Government's Sentencing

Memorandum has been served upon the following by electronic filing:

Maria A. Pedraza, Esquire
*maria_pedraza@fd.org*

*Counsel for Jose Luis de la Cruz-Ramirez*

    /s   Jennifer B. Jordan
JENNIFER B. JORDAN
Assistant United States Attorney

Dated:  June 22, 2017